| | |
|---|---|
| **HMS HOLDINGS LLC,** ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ) | |
| **TED A. GREVE & ASSOCIATES, P.A., et al.,** ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. No. 4).

Plaintiff filed this Motion on September 1, 2021, along with a Complaint and a Memorandum in support of this Motion. The Court heard argument on the Motion in a virtual hearing on October 8, 2021. Defendants filed their Memorandum opposing the Motion on October 12, 2021.

Upon considering the parties' arguments, this Court denies Plaintiff's request for a temporary restraining order ("TRO"). The Court finds that Plaintiff has not presented evidence sufficient to satisfy all four factors of the Winter test to grant the "extraordinary remedy" of a preliminary injunction.

Of those four factors, the Court especially emphasizes that Plaintiff has not presented sufficient evidence that the TRO is needed to prevent irreparable harm. Plaintiff's delay in

bringing this action and the fact that Plaintiff appears to have pled viable theories of relief in its Complaint which could allow it to recover damages in the ordinary course of litigation suggest that Plaintiff will not suffer irreparable harm absent a TRO and preliminary injunction. Plaintiff has not established that the harm it alleges could not be remedied in the ordinary course of litigation, if it were to prevail on the merits.

Because Plaintiff has failed to satisfy the elements of the Winter test, Plaintiff's Motion for a TRO and Preliminary Injunction is **DENIED**.

## I. BACKGROUND

Plaintiff asserts the following facts in the complaint, and Defendants do not appear to dispute these facts in their Memorandum in opposition to the Motion. (Doc. No. 1; Doc. No. 11 at 2). Defendant Britt Nicklaus Caulder was a participant in the HMS Holdings Limited Partnership Employee Health Plan (the "Plan"), provided by Plaintiff HMS Holdings, LLC. (Doc. No. 1 at 1–2). Caulder was injured in an automobile accident on October 12, 2020. (Doc. No. 1 at 3). Pursuant to Caulder's participation in the Plan, the Plan disbursed at least $104,985.60 in payments to health providers for treating his injuries. (Id.).

In addition, Caulder retained Defendants Robert Herford and the law firm of Ted. A. Greve & Associates, P.A. to represent him in a personal injury lawsuit related to this accident. (Doc. No. 1 at 4). Caulder settled his claim for $100,000. (Id.). According to their Memorandum and an attached Exhibit, Defendants then sent a letter to Plaintiff informing it that they were "making a claim against the tortfeasor" and asking if Plaintiff was "claiming any right of reimbursement in this matter." (Doc. No. 11-1 at 2). This letter was dated November 5, 2020. (Id.). Defendants enclosed an additional letter informing Plaintiff that, if their plan was an

insured plan, it was not entitled to subrogation and reimbursement under North Carolina law and informing Plaintiff that "[t]he burden of demonstrating self-funded status is yours." (Id. at 3). At argument, the parties disputed whether Plaintiff had actually received this letter because the letter was sent to "Hendrick Automotive Group" rather than "HMS Holdings LLC." (Doc. No. 11 at 6). However, Defendants assert that "Hendrick Automotive Group" and "HMS Holdings LLC" have the same registered address with the North Carolina Secretary of State and that Plaintiff's agent received a copy of the letter. (Id.)

Plaintiff brings this action under the Employee Retirement Income Security Act ("ERISA") and other alternative theories of liability and argues that it is entitled to "subrogation and reimbursement." (Doc. No. 1 at 3). In essence, Plaintiff is asserting that Defendant Caulder has obtained a double recovery, receiving $104,985.60 from the Plan and $100,000 from the lawsuit for injuries of about $100,000.

Plaintiff seeks a TRO and preliminary injunction to restrain Defendants from "wasting, disbursing, spending, converting or comingling any proceeds of any personal injury claims arising out of injuries sustained by Defendant Caulder as a result of an accident occurring on or about October 12, 2020." (Doc. No. 4 at 1). Plaintiff argues that such a TRO and preliminary injunction is necessary because ERISA only allows for equitable relief and that such relief is limited to specifically identifiable proceeds from the lawsuit. (Doc. No. 5 at 2, 10–11). While Plaintiff reserves the right to argue that the law does not impose such a limit on its recovery, (Id. at 2), Plaintiff interprets a recent Supreme Court decision to bar plaintiffs from "recover[ing] from a defendant's general assets once the proceeds of a third-party settlement are dissipated on non-traceable items," (Id. at 10). See Montanile v. Bd. of Trustees of Nat'l Elevator Indus.

Health Benefit Plan, 136 S.Ct. 651 (2016). As a result, Plaintiff argues that "if Defendants are allowed to dissipate the settlement proceeds on non-traceable items, Plaintiff will likely be deprived of its right to recovery." (Doc. No. 5 at 11). Plaintiff asserts that making this Motion is "doing exactly what the Supreme Court has opined it must do to preserve its claim over the proceeds of Defendants' settlement proceeds." (Id.) (emphasis in original).

## II.    LAW GOVERNING TROs AND PRELIMINARY INJUNCTIONS

Applications for issuance of a TRO are governed by FED. R. CIV. P. 65(b). However, "when the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction." Wright and Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.).

In evaluating a request for a TRO, the court considers the same factors applied for a preliminary injunction. Pettis v. Law Office of Hutchens, Senter, Kellam & Pettit, No. 3:13-CV-00147-FDW, 2014 WL 526105, at *1 (W.D.N.C. Feb. 7, 2014) (citing Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411 (4th Cir. 1999)). In assessing such factors, a plaintiff must demonstrate that: (1) she is likely to succeed on the merits; (2) she will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in her favor; and (4) the injunction is in the public interest. League of Women Voters of N. Carolina v. N. Carolina, 769 F.3d 224, 236 (4th Cir. 2014), cert. denied, 135 S. Ct. 1735 (2015) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Preliminary injunctions should not be granted when there is only a "possibility of irreparable harm" because a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)

(per curiam) (emphasis added)). "Mere injuries, however substantial … are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

### III. DISCUSSION

Plaintiff argues that it will suffer irreparable harm if a TRO and preliminary injunction is not granted because, under Montanile, ERISA may only permit it to obtain "equitable relief" and such relief may be limited to specifically identifiable proceeds. Plaintiff argues that Defendants will be able to comingle or otherwise transfer these assets in such a way that renders them non-identifiable and therefore beyond the reach of an ERISA action, unless the Court issues an order which would prevent Defendants from doing so. Plaintiff argues that such comingling will result in irreparable harm to Plaintiff by denying Plaintiff any relief for Defendants' alleged double recovery.

A plaintiff is only entitled to a TRO and preliminary injunction if it can establish that it will likely suffer irreparable harm in the absence of such relief. Winter, 555 U.S. at 20. The Court will not grant a TRO or preliminary injunction when the plaintiff's injury could be adequately remedied in the ordinary course of litigation. In addition, a plaintiff's delay in bringing a lawsuit and/or Motion for TRO and preliminary injunction "may indicate an absence of the kind of irreparable harm required to support a preliminary injunction." Quince Orchard Valley Citizens Ass'n v. Hodel, 872 F.2d 75, 80 (4th Cir. 1989).

In this case, Plaintiff does not appear to be at risk of irreparable harm. As Defendants point out, Plaintiff has pled multiple alternative causes of action in its Complaint which do not

-5-

Case 3:21-cv-00460-MOC-DSC   Document 13   Filed 11/05/21   Page 5 of 9

rely upon ERISA. (Doc. No. 1 at 7–11). Unlike Plaintiff's ERISA theory, these other theories of liability do not appear to be limited to equitable relief. Therefore, even if the proceeds from Defendants' personal injury lawsuit are commingled or otherwise rendered nonidentifiable, Plaintiff will still be able to recover damages in the ordinary course of litigation if it prevails on the merits of its alternative causes of action.

In addition, Plaintiff's delay undermines its argument that it will suffer irreparable harm. Plaintiff claims that it "is doing exactly what the Supreme Court has opined it must do to preserve its claim over the proceeds of the Defendants' settlement proceeds." (Doc No. 5 at 11) (emphasis in original). But, as Plaintiff writes in its Memorandum, the Supreme Court counsels plaintiffs to "immediately sue[] to enforce the lien." (Id.) (quoting Montanile, 136 S.Ct. at 658) (emphasis added). More than nine months passed between when Plaintiff received a letter from Defendants informing them of the Settlement and when Plaintiff brought suit, undermining Plaintiff's claim that it followed the Supreme Court's admonition to "immediately sue."

Delay is a factor that militates against a finding of irreparable harm. As Defendants contend, delay "may indicate an absence of the kind of irreparable harm required to support a preliminary injunction." Hodel, 872 F.2d at 80. This is because "an application for preliminary injunction is based upon an urgent need for the protection of a Plaintiff's rights" and therefore "a long delay in seeking relief indicates that speedy action is not required." Id. (citing Skehan Bd. of Trustees of Bloomsburg State Coll., 353 F.Supp. 542, 543 (M.D. Pa. 1973). In Hodel, the Fourth Circuit upheld a denial of a TRO and preliminary injunction where plaintiffs asserted irreparable harm but a "district court viewed this assertion skeptically … because of [plaintiffs'] delay in bringing this action." Id. The Fourth Circuit cited the district court's conclusion that

-6-

"whatever irreparable harm Plaintiffs face … is very much the result of their own procrastination." Id. The delay in Hodel was nine months, similar to the delay here. Therefore, the Court finds that Plaintiff's delay inclines against a finding of irreparable harm.

Plaintiff cites cases where other district courts granted TROs and preliminary injunctions in similar situations. (Doc. No. 5 at 11). Notably, however, these cases involve plaintiffs beginning efforts to recover funds much sooner than in this case. In one of the cases cited by Plaintiff, the plaintiff brought suit on December 20, 2007 and defendants did not even receive funds from their personal injury lawsuit settlement until December 27, 2007. Diamond Crystal Brands, Inc. v. Wallace, 531 F.Supp.2d 1366, 1369 (N.D. Ga. 2008). However, the court subsequently expanded the scope of the TRO and preliminary injunction upon reconsideration in May 2008. Diamond Crystal Brands, Inc. v. Wallace, 563 F.Supp.2d. 1349, 1354 (N.D. Ga. 2008). In the other case, the defendants settled their personal injury claims in January 2002 and, while plaintiff did not file suit until February 2003, it made efforts to recover funds from the personal injury claims "starting in the spring of 2002." Mank ex rel Hannaford Health Plan v. Green, 297 F.Supp.2d 297, 300 (D. Me. 2003).

In sum, the Court holds that Plaintiff has failed to satisfy the "irreparable harm" requirement of the Winter test because of the availability of alternative theories of liability that will permit Plaintiff to recover in the ordinary course of litigation, if successful on the merits, and Plaintiff's delay in bringing the action. Because it has not satisfied the element of "irreparable harm," Plaintiff cannot obtain a TRO and preliminary injunction under the Winter test.

In addition, the Court notes that delay also affects the balance of hardships. For example, the Court in <u>Hodel</u> considered the balance of hardships arising from the plaintiffs' delay, discussing $7.1 million in planning and construction costs expended during the nine months that plaintiffs failed to bring their claim. <u>Id.</u> Turning to this case, the Court finds that it is reasonable to expect parties in Defendants' position—i.e. successful personal injury plaintiffs who may be liable to an insurance plan for subrogation and reimbursement—to retain proceeds from litigation for some time after recovery in order to permit ERISA claims against the proceeds. But the Court is hesitant to issue a decision that could be interpreted to require such parties to delay distribution of personal injury lawsuit proceeds for months on end to preserve the viability of potential subrogation/reimbursement claims under ERISA. This is likely why the Supreme Court counseled parties in Plaintiff's position to "<u>immediately</u> sue."

Nonetheless, the Court is sympathetic to Plaintiff's claim. The wrongful double recovery alleged by Plaintiff, <u>if</u> proven at the merits stage, would amount to a miscarriage of justice. But as discussed above, Plaintiff has pled alternative theories of liability which would appear to allow it to obtain damages at law, thereby preventing any wrongful double recovery in the ordinary course of litigation and precluding a finding of irreparable harm. Plaintiff's delay in bringing its action also inclined against a finding of irreparable harm. Plaintiff has been placed in a difficult position by ERISA's limitation to equitable relief, which appears to require plaintiffs to file suit immediately or risk losing their ERISA claims, but it is not for this Court to determine whether that is sound policy.

## IV. CONCLUSION

Because Plaintiff has clearly failed to show a likelihood of irreparable harm, Plaintiff cannot satisfy the Winter test, which requires that all four elements of the test be met. Therefore, Plaintiff is not entitled to a TRO or preliminary injunction.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for a Temporary Restraining Order (Doc. No. 4) is **DENIED**.

Signed: November 5, 2021

Max O. Cogburn Jr
United States District Judge